CENTURY MUTUAL INSURANCE COMPANY v PADDOCK

Docket No. 89781. Submitted March 4, 1987, at Lansing. Decided June 6, 1988.

Century Mutual Insurance Company brought an action in the Eaton Circuit Court seeking a declaration that, under the terms of a homeowner's insurance policy covering Waldo Ted Paddock and Waldo Ted Paddock, Jr., it was under no duty to defend or indemnify the Paddocks in an action brought by David and Frank Imbrunone against the Paddocks following a barroom altercation in which the Imbrunones were allegedly injured by the Paddocks. The trial court, Hudson E. Deming, J., based on facts stipulated to by the parties, granted summary disposition in favor of plaintiff. The Paddocks appealed and the Imbrunones cross-appealed.

The Court of Appeals *held*:

1. Under the terms of the policy, plaintiff's obligations were to pay, up to the limit of liability, sums for which an insured was legally liable because of bodily injury or property damage caused by an accident covered by the policy and to defend any suit for damages, provided the suit resulted from bodily injury or property damage not excluded under the policy. Excluded from coverage was liability for injury caused intentionally by or at the direction of the insured. The trial court correctly ruled that the Imbrunones' injuries were not brought about by an accident since the injuries were the foreseeable result of the Paddocks' intentional act of kicking the Imbrunones.

2. The exclusion is not ambiguous and bars coverage where, as here, there was (1) an intentional act and (2) an intentionally caused injury by the insured. Testimony by the Paddocks

REFERENCES

Am Jur 2d, Insurance §§ 559 *et seq.*, 587 *et seq.*

Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured. 31 ALR4th 957.

Liability insurance: assault as "accident," or injuries therefrom as "accidentally" sustained, within coverage clause. 72 ALR3d 1090.

Liability insurance: "accident" or "accidental" as including loss resulting from ordinary negligence of insured or his agent. 7 ALR3d 1262.

on deposition that they had kicked the Imbrunones until they "had had enough" belies the Paddocks' claim that they had acted in self-defense.

Affirmed.

1. INSURANCE — ACCIDENT.

An accident within the meaning of policies of accident insurance may be anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby and takes place without design or intentional causation on his part.

2. WORDS AND PHRASES — ACCIDENT.

An accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.

3. INSURANCE — EXCLUSIONS — INTENTIONAL ACTS.

An insurance policy provision which excludes coverage for liability caused intentionally by or at the direction of the insured is effective where there is both an intentional act and an intentionally caused injury by the insured.

4. INSURANCE — EXCLUSIONS — INTENTIONAL ACTS.

Where an injury is the natural, anticipated and expected result of an intentional act, a court may presume that both act and result are intended.

*Willingham, Coté, Hanslovsky, Griffith & Foresman, P.C.* (by *John A. Yeager* and *Curtis R. Hadley*), for plaintiff.

*Rapaport, Pollok & Farrell, P.C.* (by *Allen Schlossberg*), for defendants Paddock.

*O'Bryan Law Center, P.C.* (by *D. Michael O'Bryan* and *Michael H. McCormick*), for defendants Inbrunone.

Before: H. HOOD, P.J., and D. E. HOLBROOK, JR., and M. R. STEMPIEN,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

M. R. STEMPIEN, J. Defendants Waldo Ted Paddock and Waldo Ted Paddock, Jr., and defendants Frank and David Imbrunone respectively appeal and cross-appeal as of right from a judgment of the Eaton Circuit Court granting summary disposition to plaintiff Century Mutual Insurance Company pursuant to MCR 2.116(A). We affirm the ruling of the circuit court that plaintiff is not required to defend or indemnify its insureds, the Paddocks, in an underlying civil action filed by the Imbrunones.

On March 6, 1985, Frank Imbrunone and his son, David, filed a complaint against Waldo Ted Paddock and his son, Waldo Ted Paddock, Jr., in Genesee Circuit Court, alleging that the Paddocks "did wantonly and viciously attack, assault, and otherwise injure Plaintiffs without provocation." The complaint arose from a fight at the Avalon Bar in Hillman, Michigan, on the night of New Year's Eve, 1982, during which Frank Imbrunone allegedly suffered a broken leg, fractured ribs and a blowout fracture of the right eye socket. David Imbrunone allegedly sustained a fractured ankle in the fight.

The Imbrunones testified at their depositions that, after drinking and playing pool inside the bar, they were confronted outside by a group of seven or eight men. One of these men, later identified as Waldo Paddock, Jr., instigated a fight by throwing punches at David Imbrunone. When David tried to protect himself, Waldo Paddock, Sr., also began punching him. David slipped to the ground and the younger Paddock continued punching and kicking him. When Frank Imbrunone tried to protect his son by crawling on top of him, he was kicked as well.

The Paddocks testified at their depositions that David Imbrunone started the fight inside the bar

when he told them to leave after serving them a round of drinks. They asserted that David punched Waldo Paddock, Sr., inside the bar after Waldo stated that he and his son would not leave until they had finished their drinks. The fight moved outside the bar and, once outdoors, the Imbrunones were knocked to the ground. Both Paddocks testified that they kicked the Imbrunones for two or three minutes as the Imbrunones lay on the ground, until the Imbrunones "had had enough."

The Paddocks sought coverage under a homeowner's policy issued to them by Century Mutual for their defense of the Imbrunone lawsuit. Century Mutual provided a defense under a reservation of rights and commenced this action seeking a declaration that coverage is not provided under the policy. The circuit court determined that there was no duty to defend or indemnify the Paddocks under the policy because the Imbrunones were injured by the intentional acts of the Paddocks. The circuit court held that intentional acts are not included in the policy's coverage provisions, and are encompassed by its exclusion provisions. We agree with the ruling of the circuit court.

The personal liability coverage portion of the policy provides as follows:

> We pay up to our limit of liability, all sums for which any insured is legally liable because of bodily injury or property damage caused by an occurrence to which this coverage applies. We will defend any suit seeking damages, provided the suit resulted from bodily injury or property damage not excluded under this coverage.

"Occurrence" is defined as an "accident." Excluded from coverage is "liability . . . caused intentionally by or at the direction of any insured."

The Paddocks assert on appeal that, in order for

their conduct to fall within the policy exclusion, they must have committed a voluntary, avoidable act with intent to injure the Imbrunones. They claim that because they acted purely in self-defense on the night of the fight, their actions must be characterized as involuntary, and so are not encompassed by the language of the exclusion. Moreover, the Paddocks assert that coverage should be afforded to them as a matter of public policy; they fear that the ruling of the circuit court will deter people from defending themselves from attack out of fear of losing liability coverage.

The Imbrunones argue on cross-appeal that the language of the policy exclusion is ambiguous. They would construe the exclusion to encompass only situations where the insured colludes with a third party to create liability on the part of the insurer.

Initially, we hold that the circuit court was correct in its ruling that the Imbrunones' injuries were not brought about by an accident as required by the coverage provisions of the Century Mutual policy. Accident has been defined by the Michigan Supreme Court as follows:

> "An 'accident', within the meaning of policies of accident insurance, may be anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby—that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." [*Guerdon Industries, Inc v Fidelity & Casualty Co of New York*, 371 Mich 12, 18-19; 123 NW2d 143 (1963), quoting 10 Couch, Insurance (2d ed), § 41:6, p 27.]

We find no accident in the instant case because the Imbrunones' injuries were the foreseeable result of the Paddocks' kicking. Despite the Paddocks' contention that they acted involuntarily in defending themselves, they both testified that they kicked the Imbrunones for two or three minutes after the Imbrunones had fallen to the ground and presumably were no longer a threat. The Paddocks' kicking was not an "undesigned contingency," and so falls outside the policy coverage provisions.

With respect to the policy exclusion, we disagree with the Imbrunones that its language is ambiguous. This Court has been called upon several times to construe language identical to that at issue in the instant case, and has done so without finding it ambiguous. See, e.g., *Transamerica Ins Co v Anderson,* 159 Mich App 441; 407 NW2d 27 (1987); *Frankenmuth Mutual Ins Co v Beyer,* 153 Mich App 118; 395 NW2d 36 (1986); *Farm Bureau Mutual Ins Co v Rademacher,* 135 Mich App 200; 351 NW2d 914 (1984).

Further, we find that the Imbrunones' interpretation of the exclusion is wholly inconsistent with this Court's previous construction of identical language. The exclusion for intentional acts encompasses far more than the rare instances of collusion described by the Imbrunones. The exclusion bars coverage where there has been (1) an intentional act and (2) an intentionally caused injury by the insured. *Transamerica Ins Co, supra,* p 444, citing *Linebaugh v Berdish,* 144 Mich App 750, 755; 376 NW2d 400 (1985).

The Paddocks seek to escape the policy exclusion by asserting that their acts were involuntary. We note that the deposition testimony given by the Paddocks and the Imbrunones presents two completely different versions of the New Year's Eve

incident, particularly with respect to the issue of self-defense. However, even if we accept the Paddocks' version that they were forced into a fight as a matter of self-defense, we would still reach the conclusion that their actions were precisely the type which the Century Mutual policy excluded from coverage. Both Paddocks testified that they kicked the Imbrunones after the latter had fallen to the ground, until the Imbrunones "had had enough." As this behavior was unnecessary to the Paddocks' self-defense, we can only conclude that it was intentional.

The element of intentionally caused injury was addressed in *Transamerica Ins Co, supra.* This Court stated: "Where the injury . . . is the natural, anticipated and expected result of an intentional act, courts may presume that both act and result are intended." Accordingly, we conclude that the injury to the Imbrunones was intentional because it was the natural, expected result of the Paddocks' kicking.

Even giving the Paddocks the benefit of the doubt as to the necessity of kicking the Imbrunones in self-defense, we find that the policy exclusion bars coverage. In *Frankenmuth Mutual Ins Co, supra,* this Court held that exclusionary language identical to that in the Century Mutual policy did not obligate the insurer to defend an insured who committed a battery in alleged self-defense. This Court reasoned that regardless of the jury's finding on the self-defense issue, the insurer was under no duty to pay on behalf of the insured. Where the jury accepted the insured's version of the incident, there would be no liability on the part of the insured. If the jury rejected the insured's defense, the insured would have committed an intentional act not covered by the policy. Where neither outcome led to a duty of the in-

surer to pay on behalf of the insured, this Court refused to impose on the insurer a duty to defend. In the instant case, Century Mutual's situation is identical to that of the insurer in *Frankenmuth Mutual Ins Co.* Regardless of whether a trier of fact accepts the Paddocks' contention that they entered the fight in self-defense, Century Mutual will have no obligation to pay damages on their behalf. Accordingly, we can impose on Century Mutual no duty to defend.

The Paddocks' argument that coverage should be afforded as a matter of public policy is disingenuous. Requiring Century Mutual to provide insurance coverage in the instant case would encourage barroom brawlers everywhere to cry "He hit me first!" and run for insurance cover to defray the expenses of their actions. This is surely not in the interest of public policy in a world where it is rarely clear who threw the first punch.

Affirmed.