STATE FARM FIRE & CASUALTY COMPANY v FISHER

Docket No. 119469. Submitted April 9, 1991, at Detroit. Decided
December 30, 1991, at 9:00 A.M. Leave to appeal sought.

State Farm Fire and Casualty Company, insurer of the home of
James Fisher, Sr., and Sharon Fisher, brought an action in the
Wayne Circuit Court against James Fisher, Jr., and Carrie
Fisher, the children of the insureds and residents in their
household, after the Fisher children were convicted of volun-
tary manslaughter and were sued for negligence for the fatal
shooting of Kendrick Davis. State Farm, citing a clause in its
policy that excludes coverage for bodily injury expected or
intended by an insured, sought a declaration that it did not
have a duty to defend or indemnify the Fisher children in the
negligence action brought by Mary Davis as personal represen-
tative of the decedent's estate. League General Insurance Com-
pany, the insurer of an automobile owned by the Fisher par-
ents and used by the Fisher children during the shooting
incident, intervened as a plaintiff and sought a declaration
that, in accordance with a clause in its policy excluding cover-
age for bodily injury caused intentionally by or at the direction
of the insured, it was not under a duty to defend or indemnify
the Fisher children in the negligence action. Mary Davis inter-
vened as a defendant in opposition to the insurers' requests.
The court, Robert J. Colombo, Jr., J., granted summary disposi-
tion for both insurers, determining that they could deny cover-
age on the basis of their exclusionary clauses because the
Fisher children's convictions of voluntary manslaughter conclu-
sively established that the shooting was intentional. Davis
appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Automobile Insurance §§ 191, 192; Insurance §§ 708,
709.

Criminal conviction as rendering conduct for which insured con-
victed within provision of liability insurance policy expressly
excluding coverage for damage or injury intended or expected by
insured. 35 ALR4th 1063.

Construction and application of provision of liability insurance
policy expressly excluding injuries intended or expected by in-
sured. 31 ALR4th 957.

1. The Court of Appeals is bound by Administrative Order No. 1990-6 to follow *Alber v Farm Bureau Ins Co,* 187 Mich App 557 (1991), in which it was held that where an exclusionary clause requires that the injury be intentionally caused, the clause is applicable only if the insured subjectively intended both the act and the resulting injury.

2. The conviction of the Fisher children for voluntary manslaughter conclusively established the requisite intent for the application of both insurers' exclusionary clauses, whether an objective or subjective test is applied.

Affirmed.

INSURANCE — HOMEOWNER'S INSURANCE — AUTOMOBILE INSURANCE — EXCLUSIONS — INTENTIONAL ACTS.

An insured's conviction of voluntary manslaughter, regardless of whether the insured's intent was to kill or merely to cause serious bodily harm, conclusively establishes an intentional act for which homeowner's or automobile insurers may deny coverage pursuant to clauses providing an exclusion for bodily injury "expected or intended by an insured" or "caused intentionally by or at the direction of the insured."

*Draugelis & Ashton* (by *John A. Ashton*), for State Farm Fire & Casualty Company.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin* and *Mark C. Smiley*), for League General Insurance Company.

*Rifkin & Kingsley, P.C.* (by *Brian J. Kingsley*), for Mary Davis.

Before: DOCTOROFF, P.J., and GILLIS and REILLY, JJ.

PER CURIAM. Intervening defendant Mary Davis, personal representative of the estate of Kendrick Davis, deceased, appeals as of right from the circuit court's orders granting plaintiff State Farm Fire and Casualty Company's and intervening plaintiff League General Insurance Company's motions for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

Kendrick Davis was shot and killed by James Curtis Fisher, Jr., a minor, on June 28, 1986. At the time of the shooting, Davis was a passenger in a car driven by Jerome Rucker and James was a passenger in his parents' Jeep, which was being driven by his sister, defendant Carrie Fisher, age nineteen.

On the day of the incident, Carrie and James were left home by their parents and other siblings, who went on a trip to Illinois. Earlier in the evening, before the shooting, Carrie apparently was physically assaulted by Jerome Rucker. When Carrie told James of the assault, he went to the garage and retrieved a tire jack. He then used the jack to pry open a closet that was secured by a Yale lock, in order to get his father's rifle. He loaded the gun with shells he found in his father's dresser. Then he and Carrie left the house, took their parents' Jeep, and began their search for Rucker. They located Rucker's car and pursued it. James fired three shots, none of which hit the moving vehicle. The fourth shot penetrated the rear window, killing Kendrick Davis. James and Carrie were subsequently convicted in Detroit Recorder's Court of voluntary manslaughter. MCL 750.321; MSA 28.553.

Mary Davis brought an action in the Wayne Circuit Court, alleging that the decedent died as a result of James' negligent use of a firearm. The complaint was subsequently amended to include allegations of automobile negligence on the part of Carrie and James.[1] State Farm, which had issued a

---

[1] The complaint also alleged that James Fisher, Sr., and Sharon Fisher, the parents of James and Carrie, were negligent in the supervision of their children and in their entrustment of the vehicle to Carrie. The trial court granted the parents' motion for summary disposition. We affirmed this decision in *Davis v Fisher,* unpublished opinion per curiam of the Court of Appeals, decided December 6, 1991 (Docket No. 119678).

homeowner's insurance policy to James Fisher, Sr., and Sharon Fisher, the parents of Carrie and James, brought this declaratory judgment action, claiming that it was not liable to defend or indemnify Carrie and James in the underlying action brought by Davis. League General, the insurer of the Jeep, subsequently intervened and also asserted that it owed no duty to defend or indemnify James and Carrie. Davis intervened as a defendant.

Both State Farm and League General brought motions for summary disposition pursuant to MCR 2.116(C)(10), claiming that their policies excluded coverage for the type of injury suffered by Kendrick Davis. The trial court found that, because the convictions of James and Carrie conclusively established that the shooting of Kendrick Davis was intentional, the exclusions in the State Farm and League General insurance policies applied. Accordingly, the court determined that the insurance companies did not have a duty to defend or indemnify James or Carrie in the underlying lawsuit.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. The trial court, in ruling on the motion, must consider the pleadings, affidavits, depositions, and other documentary evidence submitted by the parties. The court must decide, giving the benefit of any reasonable doubt to the nonmoving party, whether the kind of record that might be developed will leave open an issue upon which reasonable minds might differ. This Court is liberal in finding a genuine issue of material fact. However, where the opposing party fails to come forward with evidence, beyond allegations or denials in the pleadings, to establish the existence of a material factual dispute, the motion is properly granted.

*Zeniuk v RKA, Inc,* 189 Mich App 33, 36; 472 NW2d 23 (1991); MCR 2.116(G)(4).

Davis claims that the trial court erred in granting the motions for summary disposition. She argues that the policy exclusions should not apply because the decedent's injuries were accidental and were not expected or intended by James and Carrie. We will address each policy separately.

### STATE FARM'S HOMEOWNER'S POLICY

State Farm's homeowner's policy excludes liability for "bodily injury . . . which is expected or intended by an insured." This exclusionary clause is applicable if the decedent's injuries occurred as the natural, foreseeable, expected, and anticipated consequence of James' or Carrie's intentional acts. *Allstate Ins Co v Freeman,* 432 Mich 656; 443 NW2d 734 (1989); *State Farm Fire & Casualty Co v Johnson,* 187 Mich App 264, 266; 466 NW2d 287 (1991). James and Carrie were convicted of voluntary manslaughter. An essential element of the crime of voluntary manslaughter is the intent to kill or commit serious bodily harm. *People v Delaughter,* 124 Mich App 356, 360; 335 NW2d 37 (1983). See also *People v Pouncey,* 437 Mich 382, 388; 471 NW2d 346 (1991).

Davis argues that the trial court erred in finding that the convictions of Carrie and James conclusively established that the decedent's injury was intended or expected by James or Carrie and was therefore within the policy exclusion. Davis asserts that the court should have employed a subjective test in order to determine the intent of James and Carrie. She argues that, because James and Carrie both have asserted that the shooting was an accident, there was a factual issue whether they expected or intended to cause the fatal injury suf-

fered by Davis, and therefore summary disposition was inappropriate. We disagree.

The trial court granted summary disposition under MCR 2.116(C)(10), relying on *Aetna Casualty & Surety Co v Sprague,* 163 Mich App 650; 415 NW2d 230 (1987). In *Sprague,* the insured was found guilty but mentally ill of first-degree murder. The trial court granted the insurer's motion for summary disposition, finding that there was no genuine issue of material fact with regard to whether the insured expected or intended to kill the victim. A panel of this Court affirmed, noting that the insured's conviction established that he intended, or at least expected, that the victim would die and that the insured's proof in support of the opposite contention did not raise any issue of fact. *Id.* at 654-655.

We agree with the trial court that no genuine issue of material fact existed with regard to the application of the exclusionary clause in the State Farm policy. A criminal conviction is admissible in a declaratory action in order to determine whether an insurer has a duty to defend and indemnify its insured. *State Farm Fire & Casualty v Moss,* 182 Mich App 559, 562; 452 NW2d 816 (1989). The deposition testimony of James and Carrie presents essentially the same recitation of facts as was presented at the criminal trial. The Fishers' convictions were based in part on the court's finding that they intended to kill the decedent or inflict serious bodily harm. Carrie and James' denial of intent to injure is not sufficient to overcome the incontrovertible conviction. There is no issue of fact regarding intent. *Moss, supra; Sprague, supra* at 654-655.

Davis asserts that this Court must employ the subjective test in order to determine the insureds' expectations or intent. It is argued that, because

James and Carrie denied at trial and in their deposition testimony that the shooting was intentional, intent cannot be established under the subjective test. In *Metropolitan Property & Casualty Ins Co v DiCicco,* the companion case to *Freeman, supra,* a majority of the Court interpreted an insurance provision that excluded coverage for injuries either "expected or intended from the standpoint of the insured" as requiring the use of a subjective test to determine the expectations or intent of the insured. *Freeman, supra* at 672. Justice BOYLE noted that the absence of the word "reasonably" together with the clause "from the standpoint of the insured" clearly imparted a subjective standard. *Id.* at 709.

The Fishers' policy does not contain the language "from the standpoint of the insured." Therefore, we would find that the subjective test is not required in the present case. See *Secura Ins Co v Blotsky,* 182 Mich App 637, 642; 452 NW2d 899 (1990). However, in *Alber v Farm Bureau Ins Co,* 187 Mich App 557, 560; 468 NW2d 282 (1991), another panel of this Court found that a clause excluding coverage for injuries "caused intentionally by or at the direction of the insured" requires application of the subjective test. We disagree with the conclusion reached in *Alber* that "[w]here the exclusionary language requires that the injury be *intentionally caused,* the exclusionary clause is applicable only if the insured *subjectively* intended both his act and the resulting injury." *Id.* (Emphasis added.) Although we do not believe the subjective test is required by *Freeman* unless the policy language covers injuries "expected or intended *from the standpoint of the insured,"* we are bound to follow *Alber.* Administrative Order No. 1990-6, 436 Mich lxxxiv.

Nevertheless, whether we apply the objective or

the subjective test, the actions of Carrie and James come within the exclusion for an injury either "expected or intended by an insured." As noted above, both Carrie and James were convicted of voluntary manslaughter, which required a finding that each intended to kill or commit serious bodily harm. It makes no difference that death resulted when only serious bodily harm was intended. Once intended harm is established, the fact of an unintentional injury is irrelevant. *Johnson, supra* at 267. The convictions resolved any factual issue with respect to the subjective intent of Carrie and James.[2] Therefore, although the trial court did not employ the subjective test, we find that the court properly granted State Farm's motion for summary disposition. See *State Mutual Ins Co v Russell,* 185 Mich App 521, 528; 462 NW2d 785 (1990).

LEAGUE GENERAL'S AUTOMOBILE INSURANCE POLICY

The League General policy provides an exclusion from coverage where the bodily injury was "caused intentionally by or at the direction of the insured." This is the same policy language involved in *Alber, supra.* However, as we have already noted, we conclude that under either the objective or the subjective test, the conviction of James and Carrie for voluntary manslaughter incontrovertibly proves that they each acted intentionally and intended the resulting injury.

[2] The insured in *Alber* was convicted of third-degree criminal sexual conduct under MCL 750.520d(1)(c); MSA 28.788(4)(1)(c). In order to establish criminal liability in that case it was only necessary to prove that the insured "knew or had reason to know" that the woman with whom he had sexual intercourse was mentally incapacitated. *Alber, supra* at 564, n 2. Whether the victim acquiesced was irrelevant. It was not necessary to prove that the defendant intended to harm her. Therefore, the conviction in *Alber* differs from the convictions in the present case, which were based on the trial court's findings that James and Carrie acted with intent to kill or commit serious bodily harm.

Accordingly, we conclude that the trial court properly granted League General's motion for summary disposition. *Russell, supra* at 528.

Affirmed.